UNITED STATES DISTRICT COURT
DISTRICT OF SOUTHERN IOWA
CENTRAL DIVISION

| | |
|---|---|
| MENARD, INC., | 4:21-CV-00404-HCA |
| Plaintiff, | |
| vs. | ORDER GRANTING DEFENDANT'S MOTION TO AMEND AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court are Defendant's Motion to Amend Answer ("Motion to Amend"), and

the Parties' Cross-Motions for Summary Judgment. The Court considers the Motion to Amend

before considering the Cross-Motions for Summary Judgment.

Defendant Farm Bureau Property and Casualty Insurance Company ("Farm Bureau")

filed its Motion to Amend Answer, seeking to add an affirmative defense. Def.'s Mot. Amend

Answer ¶¶ 6–13, ECF No. 30. Plaintiff Menard, Inc. ("Menards") filed a resistance.  Pl.'s

Resistance Def.'s Mot. Amend Answer, ECF No. 38. The Court considers the Motion to Amend

fully submitted and ready for ruling. For the reasons stated below, the Court **grants** Farm

Bureau's Motion for Leave to Amend Answer.

Menards filed its Motion for Summary Judgment on May 19, 2022. Pl.'s Mot. Summ. J.,

ECF No. 25. Farm Bureau filed its Cross-Motion for Summary Judgment, combined with a

Resistance, on June 7, 2022. Def.'s Resistance & Cross-Mot. Summ. J., ECF No. 26; Def.'s Br.

Resistance & Br. Supp. Cross-Mot. Summ. J., ECF No. 29.[1] Menards filed its Resistance on June

---

[1] The Court also considers the materials in two related filings by Farm Bureau. Def.'s Resistance Pl.'s Mot. Summ. J., ECF No. 31, Def.'s Combined Br. Resistance Mot. Summ. J. & Br. Supp. Cross-Mot. Summ. J., ECF No. 34.

28, 2022. Pl.'s Resistance Def.'s Cross-Mot. Summ. J., ECF No. 39. Menards requested oral

argument if the Court deems it necessary. Pl.'s Mot. Summ. J. 1, ECF No. 25. The Court

concludes oral argument is not necessary and finds the Cross-Motions ready for ruling. For the

reasons stated below, the Court **grants** Menards's Motion for Summary Judgment and **denies**

Farm Bureau's Motion for Summary Judgment.

## II. FARM BUREAU'S MOTION TO AMEND ANSWER

### A. Background

This case involves an insurance coverage dispute. Menards operates a chain of retail

hardware stores. Am. Compl. for Declaratory J. ¶¶ 2, 8, ECF No. 14.[2] On February 16, 2021, Ms.

Bowen—a customer of Menards—filed a personal injury action against Menards alleging one of

its employees negligently moved green-treated wood boards and dropped one on Ms. Bowen,

causing injury ("Underlying Litigation"). Underlying Litigation Pet. ¶¶ 1–17, ECF No. 1-1. Ms.

Bowen's vehicle was parked near where Ms. Bowen was injured and where the boards were

stored. *See* Am. Compl. for Declaratory J. ¶¶ 11–15, ECF No. 14.  An automotive insurance

policy ("Policy") issued by Farm Bureau insured Ms. Bowen's vehicle. *Id.* ¶ 12.

On December 27, 2021, Menards filed this action seeking a declaratory judgment that

Farm Bureau's Policy provides coverage to Menards's employee as an unnamed insured, and

that Menards is thereby entitled to Farm Bureau's defense and indemnification in the Underlying

Litigation. Pet. for Declaratory J. 3–4., ECF No. 1. Menards filed an Amended Complaint on

February 1, 2022, that corrected Farm Bureau's name in the case caption. Am. Compl. for

Declaratory J., ECF No. 14.  On February 9, 2022, Farm Bureau filed its Answer to Menards's

---

[2] Menards's Amended Complaint for Declaratory Judgment enumerates a list (1 through 4) of proposed findings. Am. Compl. for Declaratory J. 3–4, ECF No. 14. This Order, when citing to the Amended Complaint for Declaratory Judgment, uses paragraph pinpoint citations that refer only to the first 17 paragraphs of Menards's Amended Complaint and not to the enumerated list of proposed findings.

First Amended Complaint. Def.'s Answer Pl.'s First Am. Compl., ECF No. 20. The Scheduling

Order and Discovery Plan set the deadline to amend pleadings for March 1, 2022. Order

Granting Proposed Sched. Order, ECF No. 16.  Farm Bureau now seeks to amend its Answer

over three months after that deadline. Def.'s Mot. Amend Answer, ECF No. 30.

## B.  Legal Standard and Analysis

Farm Bureau seeks to amend its Answer to include as an affirmative defense the

Handling of Property exclusion ("Handling of Property") located in the Policy. Def.'s Mot.

Amend Answer ¶¶ 6–13, ECF No. 30. Menards argues Farm Bureau has failed to show good

cause as required by Federal Rule of Civil Procedure 16. Pl.'s Br. Supp. Resistance Def.'s Mot.

Amend 4–6, ECF No. 38-1 (citing Fed. R. Civ. P. 16(b)(4)).  Specifically, Menards argues Farm

Bureau failed to act diligently in moving to amend and that such delay is prejudicial to Menards.

*Id.*

Rule 16(b)(4) of the Federal Rules of Civil Procedure permits modification to the trial

and discovery schedule but "only for good cause and with the judge's consent." Fed. R. Civ. P.

16(b)(4); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). "The primary

measure of good cause is the movant's diligence in attempting to meet the order's requirements."

*Sherman*, 532 F.3d at 716–17 (quoting *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006),

*abrogated on other grounds by Rivera v. Illinois*, 556 U.S. 148 (2009)); Fed. R. Civ. P. 16(b)

advisory committee's note to 1983 amendment. "'Where there has been no change in the law, no

newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for

amending pleadings,' the Court may conclude that the moving party has failed to show good

cause." *Chambers v. N. Am. Co. for Life & Health Ins.*, 4:11–cv–00579–JAJ–CFB, 2016 WL

7427333, at *3 (S.D. Iowa June 13, 2016) (quoting *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935,

948 (8th Cir. 2012)); *Sherman,* 532 F.3d at 713. And though case management orders are an important tool for streamlining litigation, "'mindless subservience to the dictates' of such an order should not overshadow the Court's fundamental obligation to achieve a just adjudication of a civil claim, especially in the absence of any prejudice to a nonmoving party." *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Pracs. Litig.*, No. 99–MD–1309 (PAM), 2002 WL 31371945, at *5 (D. Minn. Oct. 7, 2002) (quotation omitted); *see also Chambers*, 2016 WL 7427333, at *3.

Once diligence is determined, prejudice to the nonmoving party may be considered. *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). The decision to grant leave to amend under Rule 16(b) is within the Court's discretion. *Bradford*, 249 F.3d at 809.

1. <u>Diligence</u>

Menards argues Farm Bureau knew when the petition for declaratory judgment was filed that the case concerned a potential loading injury that occurred when Menards's employee moved green-treated boards near a customer. Pl.'s Br. Supp. Resistance Def.'s Mot. Amend 4, ECF No. 38-1 (citing Pet. for Declaratory J. ¶13, ECF No. 1.).  Further, Menards argues Farm Bureau has extensive knowledge about its own policies of insurance and thus should have been able to quickly identify the Handling of Property affirmative defense. *Id.*

Farm Bureau argues it received Menards's Amended Initial Disclosures and corresponding supplementation on March 2, 2022, and March 17, 2022, respectively. Def.'s Mot. Amend Answer ¶ 8, ECF No. 30. Those disclosures contained the deposition transcripts in the Underlying Litigation of the named insured and Menards's employee. *Id.* Farm Bureau argues that while the Handling of Property affirmative defense "could have been included as a generally

applicable affirmative defense" in Farm Bureau's Answer filed on February 9, 2022, Farm

Bureau "did not possess the underlying depositions which directly implicate the [affirmative

defense] until after the deadline to amend pleadings." *Id.* ¶ 10.

Menards claims its Amended Initial Disclosures and "transcripts of all depositions taken

in the underlying liability action" were served earlier than Farm Bureau represents, on March 1,

2022, which was the deadline to amend pleadings and the deadline to provide initial disclosures.

Pl.'s Br. Supp. Resistance Def.'s Mot. Amend 4, ECF No. 38-1. Menards points out Farm

Bureau did not notify the Court or Menards of the potential need to amend Farm Bureau's

Answer in the "Joint Agenda for April 21, 2022, Status Conference," filed by Farm Bureau on

April 18, 2022. Joint Status Report, ECF No. 23. Because the report represented there were no

issues to discuss and the Parties were on track to meet their deadlines, the Court canceled the

status conference. Text Order Canceling Status Conference, ECF No. 24.

The Court finds Farm Bureau, in moving to amend its Answer, relied on newly

discovered information or changed circumstances that directly implicated the Handling of

Property exclusion. Although Farm Bureau may have been able to anticipate the potential

application of the Handling of Property exclusion at an earlier date, deciding the issue solely

upon a three-month delay on the present facts would undermine just adjudication of the claim.

2. Prejudice

Next, the Court turns to the prejudice factor of the analysis. "Motions that would

prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a

significant postponement of the trial, and a likely major alteration in trial tactics and strategy' are

particularly disfavored." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th

Cir. 2016) (citation omitted). The burden is on Menards to show unfair prejudice.

Both Parties agree that Farm Bureau's proposed amendment will not require a continuance of trial in this case. Def.'s Mot. Amend Answer ¶ 11, ECF No. 30; Pl.'s Br. Supp. Resistance Def.'s Mot. Amend 5–6, ECF No. 38-1. Menards argues, however, that Farm Bureau had the benefit of seeing Menards's Motion for Summary Judgment before filing its Motion to Amend, and further argues that Menards will need to "change direction, invest significant time, and resources in its strategy for motion practice." Pl.'s Br. Supp. Resistance 5–6, ECF No. 38-1.

As discussed below, this case is resolved on summary judgment. In Menards's Resistance to Farm Bureau's Cross-Motion for Summary Judgment, Menards addressed the Handling of Property exclusion. Pl.'s Resistance Def.'s Cross-Mot. Summ. J. 6–8, ECF No. 39. Notably, Menards argued against the application of the exclusion using a substantially similar strategy it had used on the other issues of this case. *See id.*; Pl.'s Br. Supp. Mot. Summ. J. 6–11, 14–19, ECF. No. 25-1.  Furthermore, had this case gone to trial, no new discovery would be needed, and, by the Parties' admission, trial would not need to be continued. *See* Def.'s Mot. Amend Answer ¶ 11, ECF No. 30; Pl.'s Br. Supp. Resistance Def.'s Mot. Amend 5–6, ECF No. 38-1. The Court finds Menards would not be unfairly prejudiced by the amendment.

For these reasons, the Court finds Farm Bureau's Motion to Amend is supported by good cause as provided by Federal Rule of Civil Procedure 16(b)(4).

### III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A. Background**

The Parties' filings and included appendices establish the following material facts are not genuinely disputed. Pl.'s Statement Undisputed Facts, ECF No. 25-2; Def.'s Disputed Facts Resp., ECF No. 26-2; Def.'s Statement Undisputed Material Facts, ECF No. 26-1; Pl.'s

Resistance Def.'s Undisputed Material Facts, ECF No. 39-1; Def.'s Combined Br. Resistance

Mot. Summ. J. & Br. Supp. Cross-Mot. Summ. J. 3–7, ECF No. 29.[3]

In April 2019, Ms. Bowen purchased two 2" x 10" x 10' green-treated wood boards at

Menards's store in West Burlington, Iowa.[4] She then drove around the back of Menards's store

to access Menards's lumberyard. Ms. Bowen parked her vehicle in an aisle of the lumberyard a

few-to-several feet away from where Menards's treated lumber was stored. Shortly thereafter,

one of Menards's employees ("Beeler") came to assist Ms. Bowen with the green-treated boards.

The boards were located on an upper level of shelving that stored Menards's lumber. The

upper level that held the boards was accessible only after ascending a nearby staircase.  Beeler

offered to get the boards from the upper level for Ms. Bowen. Ms. Bowen agreed to let Beeler

retrieve the boards but told him to select only straight and unwarped boards. Beeler climbed the

staircase to the upper level to access the boards. After rejecting one board because it was broken,

Beeler lowered another green-treated wood board down toward Ms. Bowen, who had moments

before walked from her vehicle in the aisle to a location on the ground beneath where Beeler was

handling the board.  Ms. Bowen claimed she reached up to grab the board as Beeler was

lowering it, and suddenly, the board fell out of the employee's hands and struck Ms. Bowen.

After that, Beeler selected another green-treated wood board and lowered it to the

ground. Beeler then came down from the upper level and finished placing the boards into Ms.

Bowen's vehicle.

Ms. Bowen is the named insured on the Policy that covers the vehicle she was using that

day. The Policy's "General Section" includes the following provision:

---

[3] The Court sorted through the statements of facts and relevant resistances and reproduced only those material facts
or parts of material facts the Parties did not dispute.
[4] The Court notes that Ms. Bowen purchased two tickets from Menards's store that permitted her to access
Menards's drive-in lumberyard where she could exchange the two tickets for two green-treated boards.

**Reservation of Rights**
No act in connection with the investigation of any loss or claim by our employees or representatives shall be considered a waiver of any defense which we might otherwise have with respect to any loss or claim. All such acts of investigation shall be considered to have been made without compromising the coverages as described in the policy. The act of investigation, by itself, is not intended to convey that coverage exists. As the facts become known, the policy language will determine if coverage exists or not for the loss, and all provisions under the policy are specifically reserved during our investigation.

The Policy's Vehicle Liability Module includes the following provisions:

**Bodily Injury Liability Coverage and Property Damages Liability Coverage**
We cover "damages" that result from "bodily injury" or "property damages" "caused by" an "occurrence" to which these coverages apply involving the ownership, operation, maintenance, use, loading, unloading or negligent entrustment of "your personal vehicle."

**Defense Obligations**
If a "suit" for covered "damages" is brought against an "insured," we will provide a defense at our expense. We have the right to investigate, decide if and how to settle and choose the attorney(s). When we have paid "damages" equal to the limit of liability coverage for an "occurrence," we have no further duty to defend any "insured" for that "occurrence."

**Who Is An Insured**
Within this module when we refer to "your personal vehicle," a "newly owned vehicle" or a "temporary substitute vehicle," "insured" is defined as:
1. You;
2. Any "household member";
3. Any other "person" while using "your personal vehicle," a "newly owned vehicle" or a "temporary substitute vehicle" if its use is within the scope of your consent; or
4. Any other "person" or organization liable for the use of such a vehicle by one of the above "insureds."

**Intrafamily Immunity**
There is no coverage for any "bodily injury" to any "insured" or any member of an "insured's" family residing in the "insured's" household.

8

**Handling of Property**
There is no coverage for any "damages" "arising out of" the handling of property:
A. Before it is moved from the place where it is accepted by an "insured" for movement into or onto a vehicle; or
B. After it is moved from a vehicle to the place where it is finally delivered by an "insured."

On August 8, 2021, Menards mailed Farm Bureau a letter containing a tender of defense and demand for indemnification, which claimed Menards and Beeler were unnamed insureds covered by the Policy as interpreted by Iowa law. Farm Bureau denied the tender of defense and demand for indemnification on September 21, 2021. Farm Bureau claimed Beeler did not qualify as an insured under the Policy and that Beeler did not "use" the vehicle as defined in the Policy. A week later, Menards again mailed Farm Bureau a letter containing a tender of defense and demand for indemnification. Menards claimed Menards and Beeler were insured by the Policy under the Policy's omnibus provision and in accordance with Iowa law, as set forth in *Dairyland Insurance Company v. Concrete Products Company*, 203 N.W.2d 558 (Iowa 1973). Farm Bureau responded on October 15, 2021, and again denied the tender of defense and demand for indemnification. Farm Bureau stood by its previous letter, and further claimed the "incident did not take place near or around Ms. Bowen's [vehicle]" and the "lumber was not being loaded into the truck when the incident occurred."

**B. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (noting the initial burden is on the movant). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific

facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d

1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp.*, 477 U.S. at 324).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion

by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of
> the motion only), admissions, interrogatory answers, or other
> materials; or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

"The court need consider only the cited materials, but it may consider other materials in the

record." Fed. R. Civ. P. 56(c)(3).

There are two issues in this case: (1) Is Menards an insured covered by the Policy?[5] and

(2) If so, does an exclusion apply? In order to determine these issues, the Court must first

construe and interpret the plain meaning of the Policy. *Liberty Mut. Ins. Co. v. Pella Corp.*, 650

F.3d 1161, 1169–70 (8th Cir. 2011).

"State law governs the interpretation of insurance policies." *Id.* at 1169 (quotation

omitted). Construction and interpretation of insurance contracts are matters of law for the court.

*Id.* "Under Iowa law, the intent of the parties, as determined by the language of the policy,

controls the court's interpretation of an insurance policy." *Id.* Ambiguous policy language is

construed in favor of the insured. *Id.* (quoting *Nationwide Agri-Bus. Ins. Co. v. Goodwin*, 782

---

[5] The issue is technically whether Menards is an insured under the Policy through its employee, Beeler. For
simplicity, this Order refers only to "Menards" when discussing that issue.

N.W.2d, 465, 470 (Iowa 2010)).  Policy language is ambiguous if it is "susceptible to two

*reasonable* interpretations." *Nationwide Agri-Bus. Ins. Co.*, 782 N.W.2d at 470. "An insurance

policy is not ambiguous . . . just because the parties disagree as to the meaning of its terms."

*Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 502 (Iowa 2013). "If an insurance

policy and its exclusions are clear, the court 'will not write a new contract of insurance' for the

parties." *Id.* (quotation omitted).

## C. Legal Analysis

Both Menards and Farm Bureau move for summary judgment. Pl.'s Mot. Summ. J., ECF

No. 25; Pl.'s Br. Supp. Mot. Summ. J., ECF No. 25-1; Def.'s Resistance & Cross-Mot. Summ.

J., ECF No. 26; Def.'s Br. Resistance & Br. Supp. Cross-Mot. Summ. J., ECF No. 29. Menards

argues the plain language of the insurance policy and Iowa's law on "loading" entitles Menards

to Farm Bureau's defense and indemnification. Pl.'s Br. Supp. Mot. Summ. J. 6–10, ECF No. 25-

1. Next, Menards claims the Handling of Property exclusion is inapplicable because of how

Iowa's law on "loading" applies to this case. Pl.'s Resistance Def.'s Cross-Mot. Summ. J. 6, ECF

No. 39. Further, Menards claims that the Intrafamily Immunity exclusion does not apply where

Menards's employee is the unnamed insured. Pl.'s Br. Supp. Mot. Summ. J. 10–12, ECF No. 25-

1. Moreover, Menards argues the Intrafamily Immunity exclusion, if applied to this case, violates

public policy insofar as it precludes recovery to a policyholder.  *Id.* at 12–14. Finally, Menards

argues Farm Bureau waived or should otherwise be estopped from asserting the exclusions

because Farm Bureau failed to raise them in their rejections of Menards's tenders of defense and

demands for indemnification. Pl.'s Br. Supp. Mot. Summ. J. 14–19, ECF No. 25-1; Pl.'s

Resistance 6–8, ECF No. 39.

Farm Bureau argues Menards is not an insured under the Policy because Beeler was not loading the green-treated wood boards at the time Ms. Bowen was injured. Def.'s Br. Resistance & Br. Supp. Cross-Mot. Summ. J. 9–15, ECF No. 29. Even if Menards and Beeler are insureds under the Policy, Farm Bureau claims the handling of property and intrafamily immunity exclusions bar coverage. *Id.* at 15–25.

The Court must first determine whether the incident is covered by the Policy. *See Walnut Grove Partners, L.P. v. Am. Fam. Mut. Ins. Co.*, 479 F.3d 949, 952 (8th Cir. 2007). Only then can exclusions of the policy be considered. *See id.*

1. Policy Coverage

Iowa law provides that vehicle insurance policies "shall insure the person named in the policy and any other person, as insured, using the motor vehicles with the express or implied permission of the named insured, against loss from liability imposed by law for damages arising out of the ownership, maintenance, or use of the motor vehicles." Iowa Code §321A.21(2)(b). This provision in vehicle insurance policies is referred to as an "omnibus clause." *See, e.g.*, *Dairyland Ins. Co.*, 203 N.W.2d at 560. A frequent issue in omnibus-clause cases is defining what constitutes "use." *See, e.g.*, *id.* Under Iowa law, "[t]hird persons, not otherwise connected with the insured vehicle or its owner, while loading the vehicle, are 'using' such vehicle within the meaning of coverage provisions of a policy which defines use as including loading and unloading." *Id.* at 561. "There is no requirement the insured vehicle being loaded constitute the cause of the accident." *Id.* "Coverage exists if there is an immediate causal connection between the loading operation or the way it is carried out and the injury-causing mishap." *Id.* at 562.

There are two doctrines that determine the scope of "loading and unloading" clauses: the complete operation doctrine and the coming to rest doctrine. *Id.* at 562. The majority of

jurisdictions apply the complete operation doctrine, which provides, "the terms 'loading' or 'unloading' are not to be limited or controlled by place or distance but by the fact of a continuous and uninterrupted movement of the articles in getting them onto or off of the vehicle." *Id.*; *see also St. Paul Mercury Ins. Co. v. Huitt*, 336 F.2d 37, 42 (6th Cir. 1964) (noting that loading begins "when the object to be transported leaves its original location and starts toward the insured vehicle for the purpose of loading").  A minority of jurisdictions apply the coming to rest doctrine, which "interprets 'loading' as beginning only after the object to be transported has come into the immediate vicinity of the insured vehicle." *Dairyland Ins. Co.*, 203 N.W.2d at 562; *see also St. Paul Mercury Ins. Co.*, 336 F.2d at 42.  Because Iowa has not explicitly adopted one doctrine over the other, the Court considers each of them.

Farm Bureau argues that neither the continuous operation nor the coming to rest doctrine afford coverage to Menards in this case. Def.'s Br. Resistance & Br. Supp. Cross-Mot. Summ. J. 10–15, ECF No. 29. Farm Bureau claims that both doctrines turn on whether the "person connected to the vehicle" consented to a third party loading an item into the vehicle. *Id.* According to Farm Bureau, Ms. Bowen qualifiedly consented to Beeler selecting boards to be loaded into Ms. Bowen's vehicle but held a right of inspection before loading could occur. *Id.* at 12–13.

Menards counters that Ms. Bowen consented unqualifiedly to Beeler's exercise of discretion in selecting two boards from the upper level where they were stored, lowering them down to the ground, and then loading them into Ms. Bowen's nearby vehicle. Pl.'s Br. Supp. Mot. Summ. J. 5–10, ECF No. 25-1; Pl.'s Resistance Def.'s Cross-Mot. Summ. J. 3–6, ECF No. 39.  Menards further argues that under either "loading" doctrine, the incident occurred while

Beeler was loading the boards.  Pl.'s Br. Supp. Mot. Summ. J. 7–10, ECF No. 25-1; Pl.'s

Resistance Def.'s Cross-Mot. Summ. J. 5, ECF No. 39.

The Court agrees with Menards. The undisputed material facts follow. Ms. Bowen

testified during her deposition that Beeler said, "If you trust me to pick out your boards, I'll go

pick them out for you. Or I'll go get them for you." Bowen Dep. 34 ll. 5–7, App'x Def.'s Mot.

Summ. J. 284, ECF No. 26-3. Ms. Bowen recalled that she responded, "Sure, as long as they're

straight and not warped at all. That would be great." Bowen Dep. 34 ll. 24–25. Ms. Bowen then

testified Beeler selected a board, noticed that it was broken, and discarded it. Bowen Dep. 34 ll.

12–18. After that, Beeler selected another board, and according to Ms. Bowen, Beeler "checked

to make sure it wasn't warped or anything." Bowen Dep. 38 ll. 11–16, App'x Def.'s Mot. Summ.

J. 285, ECF No. 26-3. Beeler then began lowering that board at which time Ms. Bowen was

injured. Bowen Dep. 35 ll. 8–12, 36 ll. 10–33, App'x Def.'s Mot. Summ. J. 284, ECF No. 26-3.

Beeler lowered the second board and "loaded the boards into [Ms. Bowen's vehicle]." Bowen

Dep. 40 l. 13, App'x Def.'s Mot. Summ. J. 285, ECF No. 26-3. Beeler's selection and handling

of the boards, and the incident, occurred in the immediate vicinity of Ms. Bowen's vehicle.[6]

Def.'s Statement Undisputed Material Facts ¶ 26, ECF No. 26-1; Pl.'s Resistance Def.'s

Undisputed Material Facts 6, ECF No. 39-1.

Given the undisputed material facts, the Court finds Beeler was loading the boards under

the coming to rest doctrine because the boards were moved toward Ms. Bowen's nearby vehicle.

The Court also finds Beeler was loading the boards under the broader complete operation

---

[6] The Parties dispute whether the vehicle was "a few feet" or "several feet" from Menards's employee, the boards, and the incident. Def.'s Statement Undisputed Material Facts ¶ 26, ECF No. 26-1; Pl.'s Resistance Def.'s Undisputed Material Facts 6, ECF No. 39-1. The Court finds that either categorization is contemplated by "immediate vicinity" in the coming to rest doctrine.

doctrine because moving the boards from the upper level to ground level toward Ms. Bowen's vehicle was a necessary step in the loading process.

The Court now turns to the Policy language. The Policy includes as an "insured" someone who uses the vehicle if the use of the vehicle is within the scope of the named insured's consent. Policy Vehicle Liability Module 1; App'x Def.'s Mot. Summ. J. 20, ECF No. 26-3. The Policy also provides that Farm Bureau provides coverage for "'damages' that result from 'bodily injury' . . . 'caused by' an 'occurrence' to which these coverages apply involving the . . . use [or] loading" of the named insured's vehicle. *Id.* The Policy defines "caused by" as "[t]he primary or efficient event which produces, brings about or gives rise to the loss, injury or damage." Policy General Section 1, App'x Def.'s Mot. Summ. J. 6, ECF No. 26-3.

For the sole purpose of this action, the Court finds there is an immediate causal relationship between the loading of the boards and Ms. Bowen's injuries.[7] Accordingly, and upon full consideration of the plain meaning of the Policy's provisions, the undisputed material facts, and the application of either the complete operation or the coming to rest doctrine, Menards is covered by the Policy.

2.  Handling of Property & Intrafamily Immunity Exclusions

The next issue is whether an exclusion bars coverage. When exclusions are at issue, the "insurer assumes a duty to define in clear and explicit terms any limitations or exclusions to the scope of coverage a policy affords." *Nat'l Sur. Corp. v. Westlake Inv., LLC*, 880 N.W.2d 724, 733–34 (Iowa 2016). "The plain meaning of the insurance contract generally prevails." *Boelman*, 826 N.W.2d at 501; *see also Henning Constr. Co., LLC v. Phoenix Ins. Co.*, 570 F.

---

[7] This Court makes no finding as to the negligence claim in the Underlying Litigation. Furthermore, the causation analysis employed by the Court here is different than that of negligence. *See Dairyland Ins. Co.*, 203 N.W.2d at 562; *St. Paul Mercury Ins. Co.*, 336 F.2d at 43 ("The question is not one in the field of torts of proximate cause of the accident, but one in the field of contracts of coverage under the wording of an insurance contract.").

Supp. 3d 670, 676 (S.D. Iowa 2021). Ambiguous policy language is construed and interpreted in favor of the insured. *Boelman*, 826 N.W.2d at 502.

*a. Handling of Property Exclusion*

Under the Policy, the Handling of Property exclusion bars coverage for damages that arise from handling of property "[b]efore it is moved from the place *where it is accepted* by an 'insured' for movement into or onto a vehicle." Policy Vehicle Liability Module 4; App'x Def.'s Mot. Summ. J. 23, ECF No. 26-3 (emphasis added).  Farm Bureau argues the exclusion's plain language bars coverage in this case because Ms. Bowen did not "accept" the boards that Beeler "selected for her inspection." Def.'s Br. Resistance & Br. Supp. Cross-Mot. Summ. J. 15–17, ECF No. 29. Farm Bureau further argues that this exclusion narrows the scope of coverage for "loading and unloading" activities that would otherwise be covered by the complete operation doctrine to only include situations where the property has been accepted by the insured. *Id.* at 16–17.

Menards argues the there is no genuine dispute of material fact that Ms. Bowen accepted the boards. Pl.'s Resistance Def.'s Cross-Mot. Summ. J. 6, ECF No. 39. Menards further argues Farm Bureau waived the Handling of Property Exclusion or should be estopped from using the exclusion because Farm Bureau failed to list it in their coverage denial letters. *Id.* at 6–8.

As discussed earlier, the Court finds there can be no genuine dispute that Ms. Bowen consented to Beeler selecting boards for Ms. Bowen and loading them onto her vehicle. Even if, as Farm Bureau argues, the acceptance condition of the Handling of Property exclusion narrowed what constitutes loading under the Policy and Iowa law, the record establishes that Ms. Bowen accepted the boards before they were moved by Menards's employee. Because the Handling of

16

Property exclusion does not apply, this Court will not address Menards's waiver or estoppel arguments.

*b. Intrafamily Immunity Exclusion*

Next, under the Policy, the Intrafamily Immunity exclusion provides: "There is no coverage for any 'bodily injury' to any 'insured' or any member of an 'insured's' family residing in the 'insured's' household." Policy Vehicle Liability Module 4; App'x Def.'s Mot. Summ. J. 23, ECF No. 26-3.

Farm Bureau contends the Intrafamily Immunity exclusion is valid and enforceable under Iowa law. Def.'s Br. Resistance & Br. Supp. Cross-Mot. Summ. J. 20–21, ECF No. 29. Farm Bureau then argues that "[b]ecause [Ms. Bowen] was a named insured when the Incident occurred, the "intrafamily immunity" exclusion applies to preclude coverage for any bodily injury she may have suffered as a result of [Menards's employee's or Menards's] negligence." *Id.* at 19.

Menards argues that the Intrafamily Immunity exclusion is inapplicable because the incident did not involve Ms. Bowen's family members, nor did it involve Beeler's family members. Pl.'s Br. Supp. Mot. Summ. J., 10–12, ECF No. 25-1. Menards points out that the rationale behind intrafamily immunity exclusions is not met here because such exclusions "serve to limit insurance indemnification where 'one family member is injured through another family member's negligence.'" *Id.* at 11–12 (citation omitted). In the alternative, Menards argues the exclusion violates public policy because it would preclude an owner of a vehicle who is injured from obtaining coverage while a non-familial third party is using the owner's vehicle. *Id.* at 12–14. This, Menards argues, is contrary to Iowa's Motor Vehicle Financial Responsibility statute. *Id.*; *see* Iowa Code §321A.21(2)(b) (omnibus coverage). Finally, Menards claims Farm Bureau

17

waived or should be estopped from using the Intrafamily Immunity exclusion because Farm Bureau failed to list it in their coverage denial letters. Pl.'s Br. Supp. Mot. Summ. J. 14–19.

Intrafamily immunity exclusions are valid and enforceable in Iowa. *Shelter Gen. Ins. Co. v. Lincoln*, 590 N.W.2d 726, 728–30 (Iowa 1999); *Walker v. Am. Fam. Mut. Ins. Co.*, 340 N.W.2d 599, 603 (Iowa 1983). However, as applied to the undisputed material facts of this case, the Court finds that the Intrafamily Immunity exclusion does not bar coverage.

The plain meaning of "intrafamily" is inside of the family. Beeler is not related to Ms. Bowen and is therefore outside of the family. The exclusion does not apply.[8] Because the Court finds the exclusion does not apply, the Court does not address Menards's waiver or estoppel arguments.

## IV. CONCLUSION

For the reasons stated, the Court **grants** Farm Bureau's Motion to Amend, ECF No. 30. The Court **grants** Menards's Motion for Summary Judgment, ECF No. 25, and **denies** Farm Bureau's Cross-Motion for Summary Judgment, ECF No. 26.

**IT IS SO ORDERED**.

DATED March 20, 2023.

Helen C. Adams
Chief U.S. Magistrate Judge

---

[8] In reaching this finding, the Court notes that were it to accept Farm Bureau's argument, omnibus coverage, under the Policy or as required by Iowa law, would be significantly undermined.